UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK MATTHEWS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EDMUND G. BROWN, et al.,<br><br>　　　　　Defendants. | No.  2:20-cv-2515 JAM DB<br><br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 58, 77) |

Plaintiff, a state prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). This case proceeds on plaintiff's second amended complaint ("SAC") filed on December 23, 2019. (ECF No. 18.) Plaintiff alleges claims against correctional employees at Deuel Vocational Institution arising from an alleged sexual assault by a correctional officer against plaintiff and the subsequent investigation. Presently before the court are the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 58, 77.) Plaintiff opposes the motions. (ECF Nos. 79, 94.) Defendants have filed replies. (ECF Nos. 82, 83.)

**PROCEDURAL BACKGROUND**

Plaintiff initiated this action in the United States District Court for the Northern District of California. On December 30, 2019, the Northern District court reviewed the allegations in the SAC and directed service of process on six defendants in their individual capacity.

1    In two separately filed motions, defendants moved to dismiss the complaint, asserting
2 improper venue and failure to exhaust administrative remedies before filing suit. (ECF No. 77
3 [defendant Pinchback], 58 [defendants Huff, Sysombath, Tout, Walker, and Jackson].)
4 Defendants Huff, Sysombath, Tout, Walker, and Jackson additionally assert the SAC fails to state
5 valid claims for relief against them and that they are entitled to qualified immunity from suit.
6    On December 14, 2020, the district court for the Northern District of California
7 considered the issue of venue and ordered the case transferred to this district. Defendants'
8 motions to dismiss remain pending.

## ALLEGATIONS IN THE SAC

10   Plaintiff alleges defendant Pinchback sexually abused him between May and October of
11 2015. A specific instance of rape occurred on October 15, 2015. This instance was investigated
12 and resulted in defendant Pinchback's criminal conviction. (ECF No 18 at 5 at 5-6, 8-9.)
13   Plaintiff was detained and questioned by defendants Huff and Jackson, who are members
14 of the "I.S.U." team that investigated the sexual assault. Plaintiff was subjected to a relentless
15 interrogation during which he was intimidated and falsely accused of having raped defendant
16 Pinchback. During the interrogation, plaintiff requested an attorney. His request for an attorney
17 was ignored. (ECF No 18 at 6-7.)
18   At the conclusion of the interrogation, plaintiff was taken to another room where
19 defendant Sysobath forcefully and painfully collected evidence from plaintiff's penis. This
20 occurred in the presence and view of a female officer, defendant Tout. Defendant Tout held
21 plaintiff's arm as defendant Sysobath collected evidence from plaintiff's penis. (ECF No. 18 at 7-
22 8.)
23   Plaintiff did not file a grievance pertaining to the facts alleged in the SAC. The SAC
24 acknowledges a grievance procedure was available, but plaintiff did not file a grievance because
25 "[t]here is no administrative remedy for the sexual abuse of a prisoner by prison employee[.]"
26 (ECF No. 18 at 2.)
27   Plaintiff alleges defendants violated his rights under the Fourth, Sixth and Eighth
28 Amendments. He seeks damages.

**STANDARDS FOR A MOTION TO DISMISS**

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon, 467 U.S. at 73. The court will not, however, assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium). Nevertheless, a court's liberal interpretation of a pro se complaint may not supply essential elements that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

**DISCUSSION**

**I. EXHAUSTION**

Plaintiff proceeds with claims against defendant Pinchback, four investigating officers or supervisors, and defendant Walker, the Chief Executive Officer of California Prison Industry Authority. All six defendants have moved to dismiss the SAC for failure to exhaust administrative remedies on the asserted basis that plaintiff's allegations affirm there was an available administrative grievance procedure which he did not utilize. (ECF No. 58 at 11; ECF No. 77 at 7.)

**A. PRISON LITIGATION REFORM ACT**

The Prison Litigation Reform Act (PLRA) of 1995 requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to exhaust available administrative remedies, a prisoner must comply with the prison's procedural rules, including deadlines, as a necessary precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 219 (2007).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (alterations and italics in original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

Since exhaustion is mandatory, unexhausted claims may not be brought to court. Jones, 549 U.S. at 211 (citing Porter, 534 U.S. at 524); see also Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (reaffirming that "special circumstances" do not excuse a failure to exhaust if remedies were available). If a prisoner has not exhausted available administrative remedies before filing his

4

1  federal suit, the court must dismiss the action without prejudice. McKinney v. Carey, 311 F.3d
2  1198, 1200-01 (9th Cir. 2002) (per curiam).

3        The failure to exhaust is an affirmative defense for which the defendants bear the burden
4  of raising and proving the absence of exhaustion. Jones, 549 U.S. 216; Albino v. Baca, 747 F.3d
5  1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the
6  complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166;
7  see also McBride v. Lopez, 807 F.3d 982, 988 (9th Cir. 2015). Otherwise, defendants must
8  produce evidence proving the failure to exhaust and are entitled to summary judgment under Rule
9  56 if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed
10 to exhaust. McBride, 807 F.3d at 985.

11 **B. UNAVAILABILITY EXCEPTION**

12       The exhaustion requirement of 42 U.S.C. § 1997 hinges on the "availability" of
13 administrative remedies. Ross, 136 S. Ct. at 1858. "An inmate ... must exhaust available
14 remedies, but need not exhaust unavailable ones." In discussing availability in Ross, the Supreme
15 Court identified three circumstances in which administrative remedies were unavailable: (1)
16 where an administrative remedy "operates as a simple dead end" in which officers are "unable or
17 consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative
18 scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it," and (3)
19 where "prison administrators thwart inmates from taking advantage of a grievance process
20 through machination, misrepresentation, or intimidation." Id. at 1859-60. Prison administrators
21 thwart an inmate from taking advantage of a grievance process if the actions of prison staff render
22 a prisoner's administrative remedies "effectively unavailable." See McBride, 807 F.3d at 987
23 ("the threat of retaliation for reporting an incident can render the prison grievance process
24 effectively unavailable"); Albino, 747 F.3d at 1177 (failure to inform a prisoner of the
25 administrative appeals process following multiple requests for instruction rendered his
26 administrative remedy effectively unavailable); Marella v. Terhune, 568 F.3d 1024, 1027 (9th
27 Cir. 2009) (a plaintiff is not required to exhaust further levels of review after being reliably
28 informed by administrator that no further remedies are available).

**C.  FAILURE TO EXHAUST IS NOT CLEAR FROM THE FACE OF THE SAC**

Pertaining to exhaustion, plaintiff marked the "Yes" box in response to the following question on his form pleading: "Is a grievance procedure available at the institution where the events relating to your current complaint occurred?" Plaintiff marked the "No" box to indicate he did not file a grievance concerning the facts in the SAC. Plaintiff further alleged "there is no administrative remedy for the sexual abuse of a prisoner by prison employee." (ECF No. 18 at 2.) The SAC included no further factual allegations regarding exhaustion.

Defendants contend plaintiff has conceded he did not exhaust available administrative remedies. They argue the allegations on the face of the SAC demonstrate plaintiff either incorrectly believed that he could not submit an administrative grievance, or incorrectly believed his situation exempted him from any requirement to file a grievance because of the nature of the injury or relief sought. Defendants therefore argue this is one of the rare cases in which the allegations of the complaint conclusively demonstrate plaintiff had available administrative remedies that he failed to exhaust.

Defendants' interpretation of plaintiff's allegations regarding exhaustion is not the only possibility. Construing the allegations and inferences therefrom in the light most favorable to plaintiff, Hishon, 467 U.S. at 73, the SAC alleges he did not have an available remedy. (See ECF No. 18 at 2 ("there is *no* administrative remedy…" (emphasis added).) Plaintiff did not allege, as defendants argue, that he sought a specific remedy that was unavailable. Plaintiff did not plead that he was exempt from exhaustion or believed he was exempt. Finally, he did not plead that he believed he could not file or did not need to file a grievance regarding sexual abuse. Additional facts explaining why he alleges he had no administrative remedy do not appear on the face of the SAC and were not required. See Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166.

In opposition to the motions to dismiss, plaintiff asserts, among other arguments, his efforts to exhaust were thwarted by prison officials which rendered administrative remedies unavailable. (ECF No. 79 at 1; ECF No. 94 at 12.) For example, following the alleged assault by defendant Pinchback on October 15, 2021, plaintiff was placed in administrative segregation and remained there until an investigation against him for "overfamiliarity" was concluded. Plaintiff

argues defendants hid facts, misrepresented the nature of the investigation, and used the threat of fake rape charges against him to intimidate, silence him, and prevent him from filing a grievance. He alleges he was denied medical and mental health treatment after the assault, which prevented him from pursuing his rights. (ECF No. 79 at 5-9.) In addition, plaintiff asserts he was threatened by defendant Huff, who stated to plaintiff, "you know what happens to prisoners that rape woman [*sic*]" (Id. at 8). Plaintiff argues defendant Huff made this threat to intimidate plaintiff in order to prevent him from pursuing administrative remedies.

The court does not consider the assertions in plaintiff's opposition memorandum as if they were alleged in the complaint. See Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998) ("Ordinarily, the face of the plaintiffs' complaint, and the exhibits attached thereto, would control the Rule 12(b)(6) inquiry.") (internal citations omitted)). Whether those assertions would show plaintiff was effectively thwarted from filing a grievance is not before the court to decide. The law is clear that plaintiff was not required to specially plead or demonstrate facts showing that he had no administrative remedy or how he was prevented from filing a grievance. See Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. Because plaintiff did not plead the facts necessary to determine whether he had an available administrative remedy, this is not one of those "rare cases where a failure to exhaust is clear from the face of the complaint." Albino, 747 F.3d at 1169; see also McBride, 807 F.3d at 985 (holding the district court did not err in dismissing the plaintiff's unexhausted complaint where there was "no need for further factual development" and the issue turned on the adequacy of facts fully set forth in the complaint).

Liberally construed, the SAC alleges plaintiff did not have an available administrative remedy. Defendants must, in this case as in most, plead and prove plaintiff's failure to exhaust available administrative remedies. See Jones, 549 U.S. at 216.

**II. FAILURE TO STATE A CLAIM**

Defendants Huff, Sysombath, Tout, Walker and Jackson move to dismiss the SAC for failure to state a claim. (ECF No. 58 at 1, 13.) These defendants additionally assert they are entitled to qualified immunity. (Id. at 22.)

////

7

A.    DEFENDANT WALKER

Defendant Walker is the Chief Executive Officer of Prison Industry Authority. Plaintiff alleges defendant Walker's office had prior knowledge that defendant Pinchback had been investigated for sexual misconduct and that there were "similar allegations" pertaining to a different state prisoner. Plaintiff alleges defendant Walker failed to take corrective actions to protect him from defendant Pinchback's predatory behavior. (ECF No. 18 at 8.)

Defendants assert plaintiff has failed to state a claim against defendant Walker because (1) plaintiff does not allege defendant Walker personally acquiesced to defendant Pinchback's conduct; (2) plaintiff does not allege defendant Walker was aware that plaintiff was personally subjected to sexual harassment; and (3) the factual allegations do not suggest defendant Walker was personally responsible for any training or supervision of defendant Pinchback. (ECF No. 58 at 14.)

A sexual assault on an inmate is deeply offensive to human dignity. Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000). Prisoners have a clearly established Eighth Amendment right to be free from sexual abuse." Id. In addition, officials have a duty "to take reasonable measures to guarantee the safety" of those in their care, which has been interpreted to include a duty to provide for their protection. Labatad v. Corrs. Corp. of Amer., 714 F.3d 1155, 1160 (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a plaintiff must show the prison officials acted with a sufficiently culpable state of mind, which is that of deliberate indifference. Id. In order to state a claim for a violation of civil rights under 42 U.S.C. § 1983, a plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id. (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established

1  . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series
2  of acts by others, which [the supervisor] knew or reasonably should have known would cause
3  others to inflict a constitutional injury." Rodriguez v. County of Los Angeles, 891 F.3d 776, 798
4  (9th Cir. 2018) (quoting Starr, 652 F.3d at 1207-08). "'A supervisor can be liable in his individual
5  capacity for his own culpable action or inaction in the training, supervision, or control of his
6  subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a
7  reckless or callous indifference to the rights of others.'" Keates v. Koile, 883 F.3d 1228, 1243
8  (9th Cir. 2018) (quoting Starr, 652 F.3d at 1208). Supervisory liability may also be alleged based
9  on acquiescence with respect to a deficient policy that is the "moving force" behind a
10 constitutional violation. See Starr, 652 F.3d at 1208; see also Hansen, 885 F.2d at 646.

11  Here, plaintiff alleges merely that defendant Walker's office was aware defendant
12 Pinchback had been investigated for similar sexual misconduct involving another inmate. On this
13 basis, plaintiff alleges defendant Walker failed to protect plaintiff. These allegations fail to state a
14 valid claim against defendant Walker for supervisory liability. See Farmer, 511 U.S. at 835; Starr,
15 652 F.3d at 1207.

### B. DEFENDANTS HUFF AND JACKSON

17  Defendants Huff and Jackson allegedly subjected plaintiff to a "relentless" interrogation
18 during which they "intimidated" him and falsely accused him of having raped defendant
19 Pinchback. They ignored his request for an attorney. (ECF No 18 at 6-7.) Defendants assert these
20 allegations fail to state a claim for a constitutional violation.

21  While the Fifth Amendment forbids the introduction of coerced statements at trial, a
22 failure to read Miranda warnings does not, in itself, violate a person's constitutional rights. See
23 Chavez v. Martinez, 538 U.S. 760, 772 (2003). The failure to read Miranda warnings does not,
24 therefore, provide grounds for a section 1983 claim. Id.

25  In opposition to the motion to dismiss, plaintiff argues defendants Huff and Jackson
26 violated CDCR regulations. (ECF No. 79 at 17.) As set forth above, however, such allegations
27 fail to state a constitutional claim. See Gardner, 109 F.3d at 430. In addition, plaintiff's
28 allegations that defendants engaged in "accusatory" and "relentless" questioning fail to allege a

sufficiently serious constitutional deprivation. The allegations against defendants Huff and Jackson are insufficient to withstand the motion to dismiss.

### C. DEFENDANTS SYSOMBATH AND TOUT

#### 1. Eighth Amendment

After the investigation, defendant Sysombath conducted a painful investigatory "procedure" to collect evidence from plaintiff's penis. This occurred in the presence of defendant Tout, who is a female officer. Defendant Tout participated by holding plaintiff's arm while defendant Sysombath obtained evidence from plaintiff's penis. Plaintiff alleges the procedure should have been performed by staff with medical training and licensure. (ECF No. 18 at 7-8.)

Defendants assert the allegations against defendants Sysombath and Tout fail to state a claim for deliberate indifference to medical needs under the Eighth Amendment. (ECF No. 58 at 15.) Defendants argue there are no allegations suggesting the collection of evidence caused plaintiff to suffer an objectively serious injury, or that their conduct resulted in anything other than routine discomfort associated with an investigation into a sexual assault. To the extent plaintiff alleges defendants were not adequately trained to collect evidence, defendants argue such contention does not suggest defendants were deliberately indifferent. (ECF No. 58 at 15-16.)

Plaintiff has not stated a claim under the Eighth Amendment premised on medical care. Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837.

Plaintiff does not allege facts allowing an inference that defendants Sysombath and Tout were, subjectively, deliberately indifferent. To the extent plaintiff alleges the individuals who collected the evidence should have been licensed medical professionals, that allegation does not,

1   by itself, allow an inference of deliberate indifference. See Snow v. McDaniel, 681 F.3d 978, 988
2   (9th Cir. 2012) (holding that prison officials may be deliberately indifferent when they choose a
3   course of treatment that is "medically unacceptable under the circumstances" and in "conscious
4   disregard of an excessive risk to plaintiff's health") (overruled on other grounds by Peralta v.
5   Dillard, 744 F.3d 1076 (9th Cir. 2014); Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th
6   Cir. 1980) ("[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
7   cause of action") (citing Estelle, 429 U.S. at 105-06).

8       In opposition to the motion to dismiss, plaintiff argues the conduct of defendants
9   Sysombath and Tout constituted cruel and unusual punishment as well as an unreasonable search.
10  (ECF No. 79 at 15-16.) Unreasonable bodily search under the Fourth Amendment will be
11  addressed separately below.

12      Prison officials violate the inmates' Eighth Amendment right to be free from cruel and
13  unusual punishment when they use excessive force against prisoners. Clement v. Gomez, 298
14  F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in
15  violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force
16  maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore
17  discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In making this determination, a court
18  may evaluate (1) the need for application of force, (2) the relationship between that need and the
19  amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any
20  efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9-10 ("The
21  Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from
22  constitutional recognition de minimis uses of physical force, provided that the use of force is not
23  of a sort repugnant to the conscience of mankind." (internal quotation marks and citations
24  omitted)).

25      Here, plaintiff alleges the challenged conduct was undertaken as part of a sexual assault
26  investigation. Under plaintiff's allegations, a legitimate penological purpose was served by the
27  search. See Hudson, 503 U.S. at 6-7. Plaintiff's allegations do not plausibly suggest either
28  defendant engaged in malicious or sadistic conduct for the purpose of causing him harm. Plaintiff

has not alleged facts allowing an inference that defendants were aware of any circumstances that would have put them on notice plaintiff was at substantial risk of injury or trauma if defendants obtained the evidence in the manner alleged. On this basis, plaintiff's allegations against defendants Sysombath and Tout do not state a claim under the Eighth Amendment for cruel and unusual punishment.

### 2. Fourth Amendment

"Loss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Nevertheless, a prisoner retains certain rights of privacy in his person under the Fourth Amendment. See Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder v. Sumner, 860 F.2d 328, 332 (1988); Grummett v. Rushen, 779 F.2d 491, 493, 495-96 (9th Cir. 1985); cf. Hudson v. Palmer, 468 U.S. 517, 525-26 (1984) (prisoner has no Fourth Amendment right to privacy in his cell).

A prisoner's bodily privacy exists only so far as it is not fundamentally inconsistent with prisoner status or incompatible with the legitimate objectives of incarceration. Pell v. Procunier, 417 U.S. 817, 822 (1974); Michenfelder, 860 F.2d at 332. A state may restrict a prisoner's rights to the extent necessary to further the correctional system's legitimate goals and policies. Hudson, 468 U.S. at 524. Institutional security has long been recognized as chief among a state's legitimate goals. Id.

In evaluating whether a prison's policy or practice is reasonable under the Fourth Amendment, courts look to the test articulated in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Under Turner, as applied to Fourth Amendment body search claims, an infringement on a prisoner's Fourth Amendment rights must be reasonably related to legitimate penological interests, which requires consideration of (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives. Bull v. City and County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010).

////

The search of an incarcerated person's body violates the Fourth Amendment when the search is "unreasonable." Bell, 441 U.S. at 558. The reasonableness test "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id. at 559. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. In analyzing reasonableness, courts "must accord great deference to prison officials' assessments of their interests: 'Prison administration is ... a task that has been committed to the responsibility of [the legislative and executive branches], and separation of powers concerns counsel a policy of judicial restraint.'" Michenfelder, 860 F.2d at 331 (quoting Turner, 482 U.S. at 85).

Plaintiff argues defendants failed to follow various CDCR procedures for removing suspected contraband from a prisoner's body. He asserts the defendants were required to have a sexual assault nurse examiner present. He contends that, except under emergency circumstances, only qualified medical staff may conduct unclothed body inspections of inmates of the opposite sex. Plaintiff further asserts an inmate victim of sexual violence or staff sexual misconduct has a right to refuse the forensic examination, which he did. His refusal was not respected. (ECF No. 79 at 14-16.)

"[T]here is no § 1983 liability for violating prison policy." Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997). Plaintiff must prove one or more of the defendants violated his constitutional rights. Plaintiff has not claimed the violation of CDCR regulations implicated a protected liberty interest, nor could he make such a claim. See Sandin v. Conner, 515 U.S. 472, 482 (1995) (noting that state prison regulations are "not designed to confer rights on inmates").

The United States Court of Appeals for the Ninth Circuit has held that in the absence of an emergency, cross-gender strip searches may violate an inmate's right under the Fourth Amendment to be free from unreasonable searches. Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1146 (9th Cir. 2011) (reversing judgment as a matter of law in favor of a female cadet who performed a strip search of a male pretrial detainee). As part of the search at issue in Byrd, a female cadet "touched [the inmate's] inner and outer thighs, buttocks, and genital area with her latex-gloved hand through very thin boxer shorts. She moved his penis and scrotum in the

1  process[.]" Byrd, 629 F.3d at 1142. The Ninth Circuit found the scope of this intrusion "far

2  exceed[ed]" searches previously sanctioned. Id.

3        In a previous case, the Ninth Circuit has held that prison policies allowing female

4  correctional officers to view male inmates in states of partial or total nudity did not violate the

5  Fourth Amendment. See Michenfelder, 860 F.2d at 332. In Michenfelder, the Ninth Circuit

6  upheld a strip search policy that called for visual body cavity searches to occur anytime a male

7  inmate left or returned to a unit or traveled under escort within the unit, including leaving and

8  returning from sick call, recreation, disciplinary hearings, and visits. Id., at 332. The Ninth Circuit

9  upheld the policy despite the plaintiff's argument that the searches were conducted in the view of

10 female officers. Id. at 333-34. The court cited the interest in providing equal employment

11 opportunities to women and the security interest in deploying available staff effectively as valid

12 penological interests. Id. at 334.

13       The Ninth Circuit has also upheld cross-gender pat-down searches that occur while the

14 inmates are fully clothed. Grummett, 779 F.2d at 496. Because such searches do not involve

15 intimate contact with the inmates' bodies, they do not violate the Fourth Amendment. Grummett,

16 779 F.2d at 496.

17       In Byrd, the Ninth Circuit distinguished Grummett by noting the female officers in

18 Grummett were not assigned to positions in which they conducted or observed strip or body

19 cavity searches and they did not have "intimate contact" with the inmates' bodies. Byrd, 629 F.3d

20 at 1142. The Ninth Circuit distinguished Michenfelder by explaining neither infrequent and

21 casual observation nor observation at a distance are so degrading as to warrant court interference.

22 Id. (quoting Michenfelder, 860 F.2d at 334). Consistent with Mitchenfelder and Grummett, the

23 Ninth Circuit in Byrd approved the observation of the First Circuit that "inadvertent, occasional,

24 casual, and/or restricted observations of inmate's naked body by a guard of the opposite sex

25 [does] not violate the Fourth Amendment, [but] if the observation was other than inadvertent,

26 occasional, casual, and/or restricted, such observation would (in all likelihood) violate the Fourth

27 Amendment, except in an emergency situation." Byrd, 629 F.3d at 1144 (quoting Cookish v.

28 Powell, 945 F.2d 441, 447 (1st Cir. 1991)). Thus, cross-gender strip searches conducted in the

absence of an emergency violate an inmate's right under the Fourth Amendment. Byrd, 629 F.3d at 1146; see also id. at 1142 (reviewing cases and concluding no case "purports to approve cross-gender strip searches in the absence of an emergency").

The proper classification of the search that occurred in this case is not immediately necessary. Cf. Powell, 945 F.2d 444 at n.5 (defining "strip search," "visual body cavity search," and "manual body cavity search"). It is sufficient to conclude plaintiff alleges he was subject to something at least as intrusive as a typical strip search because his genital area including his penis was probed or touched by defendant Sysombath.

Defendants were investigating a sexual assault, which no doubt implicated institutional security and a legitimate penological interest. It is not sufficiently clear under plaintiff's version of the events, however, that an "emergency" existed as a matter of law. In addition, viewing the allegations in the most favorable light to plaintiff, defendant Tout, who is a female officer, did more than casually observe the search from a distance. Under plaintiff's allegations, defendant Tout participated in the challenged search along with defendant Sysombath, in that Tout held plaintiff's arm as Sysombath collected evidence from plaintiff's penis. Under these circumstances, plaintiff's allegations regarding the search are sufficient to state a claim against defendants Sysombath and Tout.

### D.   QUALIFIED IMMUNITY

All defendants except defendant Pinchback assert they are entitled to qualified immunity. (ECF No. 58 at 22.) Since it is being recommended plaintiff's claims against defendants Huff, Jackson, and Walker be dismissed for failure to state a claim, the qualified immunity inquiry need only be decided as to defendants Sysombath and Tout.

Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018); White v. Pauly, 137 S. Ct. 548, 551 (2017). "Clearly established" means the statutory or constitutional question was "beyond debate" such that every reasonable official would understand that what he is doing is unlawful. See Wesby, 138 S. Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). Whether a

constitutional right was violated is generally a question of fact for the jury, but whether a right was clearly established is a question of law for the court. Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).

To be "clearly established," a rule must be dictated by controlling authority or a robust consensus of cases of persuasive authority. Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035; see also Perez v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (holding that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). A case "directly on point" is not required. Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035. Nonetheless, courts must define the law with a "high degree of specificity" when applying qualified immunity. Wesby, 138 S. Ct. at 590. The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035.

Defendants assert plaintiff cites no binding precedent to establish defendants knowingly violated a clearly established constitutional right. As to the Fourth Amendment claim against Sysombath, defendants argue it was not clearly established that it was unlawful to collect physical evidence relevant to a sexual assault investigation from an inmate suspect's genitals. As to the claim against defendant Tout, defendants argue the law did not put her on notice that it was unlawful for her to hold plaintiff's arm while physical evidence was collected from plaintiff's genital area. (ECF No. 58 at 23-24.)

Since 2011, though, it has been the law in the Ninth Circuit that "cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd, 629 F.3d at 1146. Under plaintiff's allegations, intimate areas of his body were exposed during an intrusive search after he was sexually assaulted. Under plaintiff's version of the facts, defendant Tout's observation was not inadvertent or casual. Viewing the allegations in the most favorable light to plaintiff, the intrusive search occurred not merely in the presence of a cross-gender correctional officer, but also with that officer's "close-up" participation because she held plaintiff's arm while the search was performed. Although this search at issue was a single occurrence, so was the unconstitutional

////

cross-gender search of the male detainee in Byrd. See 629 F.3d at 1142. Moreover, it is not clear that an "emergency" existed as a matter of law.

In sum, under plaintiff's version of events, Byrd's prohibition applied because defendants conducted an intrusive search of plaintiff's genitalia in the absence of an emergency. If that is what occurred, the law was sufficiently settled that reasonable officers in defendants' positions would have known such conduct violated plaintiff's Fourth Amendment rights. See Caruso v. Solorio, No. 1:15-cv-780 AWI EPG PC, 2020 WL 1450559, at *10 (E.D. Cal. Mar. 25, 2020) (denying qualified immunity as to a Fourth Amendment cross-gender strip search claim based on the clearly established law of Byrd). Accordingly, the assertion of qualified immunity by defendants Sysombath and Tout as to the Fourth Amendment claim should be denied at this stage of the case.

### E.     CONCLUSION

Based on the foregoing, this case should proceed only against defendants Pinchback, Sysombath and Tout. Plaintiff's claims against defendants Walker, Huff, and Jackson should be dismissed. Accordingly, IT IS RECOMMENDED:

1. The motion to dismiss filed by defendant Pinchback based on failure to exhaust administrative remedies (ECF No. 77) be denied;
2. The motion to dismiss filed by defendants Walker, Huff, Jackson, Sysombath and Tout (ECF No. 58) be granted in part, and denied in part, as follows:
   a. Denied to the extent it is premised on failure to exhaust administrative remedies;
   b. Denied to the extent it is based on failure to state a claim under the Fourth Amendment against defendants Sysombath and Tout and defendants' assertion of qualified immunity from suit on the Fourth Amendment claim against defendants Sysombath and Tout; and
   c. Granted as to all other causes of action against defendants Sysombath, Tout, Walker, Huff, and Jackson.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 9, 2021

DLB7
matt.2515.mtd

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE